Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| JONATHAN LÓPEZ ROMÁN<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida | TA2025RA00409 | *Revisión* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 147585<br><br>Sobre: Concesión Libertad Bajo Palabra |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 22 de enero de 2026.

Comparece Jonathan López Román (en adelante, señor López Román o recurrente) mediante un recurso de revisión, para solicitarnos la revisión de la *Resolución* emitida el 16 de octubre de 2025 y notificada el 27 de octubre de 2025, por la Junta de Libertad Bajo Palabra (en adelante, JLBP).[1] Mediante la *Resolución* recurrida, la JLBP resolvió que el recurrente debía ser referido por el DCR a la JLBP una vez estuviese cumplido el setenta y cinco (75) por ciento de la sentencia por violación al Artículo 5.04 de la Ley de Armas de Puerto Rico,[2] de acuerdo al Artículo 7.25 de la Ley de Armas de Puerto Rico de 2020 (Ley de Armas de 2020),[3] y la Ley Núm. 85-2022. Sobre dicha *Resolución*, el recurrente interpuso una oportuna solicitud de reconsideración. Decursado el término dispuesto por nuestro ordenamiento jurídico, la JLBP no se expresó en torno a la solicitud de reconsideración instada.

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC TA), a la Entrada Núm. 3, Anejo I parte 3, págs. 195-198.
[2] Ley Núm. 404-2000, 25 LPRA sec. 458c. (Derogado).
[3] Ley Núm. 168-2019, 25 LPRA sec. 467l.

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

I

De los autos ante nuestra consideración se desprende que le recurrente se encuentra recluido en una institución correccional extinguiendo las sentencias:

1. En el alfanumérico CVI2012G0003, por infracción al Artículo 106 del Código Penal del Estado Libre Asociado de Puerto Rico de 2004,[4] asesinato en segundo grado. La pena impuesta fue de quince (15) años y un (1) día de reclusión consecutivos con los casos alfanuméricos CLA2012G00009 y CLA2012G00010, y consecutivos con cualquier otra sentencia que en derecho procediera.[5] La Sentencia fue emitida el 4 de octubre de 2012.

2. En el alfanumérico CLA2012G0009, por infracción al Artículo 5.04 de la Ley de Armas de Puerto Rico.[6] La pena impuesta fue de diez (10) años de reclusión, duplicada a veinte (20) años, de acuerdo al Artículo 7.03 de la Ley de Armas de Puerto Rico,[7] consecutivos con los casos alfanuméricos CVI2012G0003 y CLA2012G0010, y consecutivos con cualquier otra sentencia que en derecho procediera.[8] La Sentencia fue emitida el 4 de octubre de 2012.

3. En el alfanumérico CLA2012G00010, por infracción al Artículo 5.15 de la Ley de Armas de Puerto Rico.[9] La pena impuesta fue de cinco (5) años de reclusión, duplicada a diez (10) años, de acuerdo al Artículo 7.03 de la Ley de Armas de Puerto Rico,[10] consecutivos con los casos alfanuméricos CVI2012G0003 y CLA2012G0009, y consecutivos con cualquier otra sentencia que en derecho procediera.[11] La Sentencia fue emitida el 4 de octubre de 2012.

4. En el alfanumérico ALE2022G0146, por infracción al Artículo 2 de la Ley Núm. 15 en cuarto grado.[12] La pena impuesta fue de siete (7) meses y quince (15) días de reclusión consecutivos con cualquier otra pena que estuviese cumpliendo.[13]

---

[4] Ley Núm. 149-2004, 33 LPRA sec. 4734. (Derogado).
[5] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 1, págs. 9-12.
[6] Ley Núm. 404, *supra*, 25 LPRA sec. 458c. (Derogado).
[7] *Íd.*, 25 LPRA sec. 460b. (Derogado).
[8] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 2, pág. 133.
[9] Ley Núm. 404, *supra*, 25 LPRA sec. 458n. (Derogado).
[10] *Íd.*, 25 LPRA sec. 460b. (Derogado).
[11] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 1, págs. 9-12.
[12] Conviene mencionar que del expediente administrativo ante nuestra consideración no surge con precisión la ley específica sobre la cual se cometió la infracción. Únicamente se desprende que se cometió una infracción al Artículo 2 de una tal Ley Núm. 15, no hay indicación de año ni nombre de la ley.
[13] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 1, págs. 9-12.

Establecido lo anterior, precisa destacar que la controversia de marras tuvo sus inicios, el 31 de marzo de 2023, cuando se recibió ante la JLBP *un Informe breve para referir casos de sentencia por delito grave y menos grave ante la Junta de Libertad Bajo Palabra* preparado por el DCR,[14] en el que hizo constar que al aquí recurrente era elegible para Libertad Bajo Palabra desde el 24 de noviembre de 2021, luego de la aplicación de la Ley Núm. 85-2022.[15] De ahí, el recurrente ha tenido historial administrativo extenso respecto a la consideración de su privilegio de libertad bajo palabra. Se desprende de los autos determinaciones de la JLBP en las cuales dispuso que consideraría el caso posteriormente.

En consonancia a lo anterior, y en lo atinente al asunto ante nuestra consideración, el 16 de julio de 2025, el recurrente incoó una *Moción Informativa.*[16] Adujo que, previamente, la JLBP había emitido una resolución interlocutoria mediante la cual dispuso que el (DCR) debía presentar un informe complementario de libertad bajo palabra, por el Programa de comunidad de Aguadilla de dicha agencia. Puntualizó que dicho informe debía especificar la distancia entre la vivienda propuesta por el recurrente y la de los perjudicados. Peticionó que se considerara el caso en el mes de septiembre de 2025.

Así las cosas, el 4 de junio de 2025, la JLBP emitió una *Resolución Interlocutoria.*[17] Mediante esta resolución, la JLBP dispuso que luego de haber evaluado el caso no podían tomar una determinación final puesto a que el DCR no había rendido el informe complementario el cual debía especificar la distancia entre la vivienda propuesta por el recurrente y las residencias de los

---

[14] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 1, págs. 1-5.
[15] Ley para enmendar el Artículo 308 de la Ley Núm. 146 de 2012, Código Penal de Puerto Rico, 33 LPRA sec. 5416 y la Ley Núm. 118 de 1974, Ley de la Junta de Libertad Bajo Palabra, 4 LPRA sec. 1501 *et seq.*
[16] SUMAC TA, a la Entrada Núm. 3, Anejo 1 parte 3, pág. 172.
[17] *Íd.*, págs.174-176.

perjudicados. A tenor, ordenó al DCR a remitir el informe en un plazo de noventa (90) días, con la información corroborada y con expresión de los términos de sentencias actualizadas en cuanto al recurrente, de forma tal que se colocara en posición a la JLBP de poder evaluarlo. Por otro lado, resolvió que la JLBP volvería a considerar el caso al recibo de la antedicha información o en el mes de septiembre de 2025, lo que ocurriese primero.

Posteriormente, el Oficial Examinador asignado a este caso evaluó la documentación que surge del expediente administrativo, entiéndase los informes, evaluaciones y expedientes que fueron referidos por el DCR, por lo que, el 19 de septiembre de 2025, emitió el *Informe del Oficial Examinador*.[18] En su Informe, luego de hacer las correspondientes determinaciones de hechos, expresó que de la hoja de liquidación de sentencias preparada por el DCR no quedaba demostrada una liquidación de sentencia en cuanto a la violación a los Artículos de la Ley de Armas en el que se atemperara al setenta y cinco (75) por ciento el mínimo si se estableciera el máximo de reclusión de la pena impuesta. Dado a lo anterior, ordenó al DCR a preparar una certificación en la cual indicara cuándo el recurrente estaría cumpliendo el setenta y cinco (75) por ciento de la sentencia por violación al Artículo 5.15 y al Artículo 5.04 de la Ley de Armas de Puerto Rico,[19] de acuerdo con lo establecido en el Artículo 7.25 de la Ley de Armas de 2020.[20] Dispuso, además, que el recurrente debía ser referido por el DCR una vez adviniera elegible.

De ahí, el 16 de octubre de 2025, notificada el 27 de octubre de 2025 de 2025,[21] la JLBP emitió la *Resolución* recurrida.[22] Se desprende de la *Resolución* que la JLBP emitió las siguientes determinaciones de hechos:

---

[18] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 3, págs. 178-180.
[19] Ley Núm. 404, *supra*, 25 LPRA secs. 458c y 458n. (Derogados).
[20] Ley Núm. 168, *supra*, 25 LPRA sec. 467l.
[21] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 3, pág.198.
[22] *Íd.*, págs. 195-198.

1. Conforme la liquidación de sentencia realizada el 7 de marzo de 2023 por el personal del área de récord de la Institucional Correccional de Guerrero en Aguadilla, la sentencia relacionada con el [A]rtículo 5.04 de la Ley de Armas la finaliza el 14 de noviembre de 2031.

2. La sentencia del Artículo 5.15 la finaliza el 24 de julio de 2037, conforme dicha liquidación.[23]

La JLPB concluyó que carecía de jurisdicción en lo relativo a las sentencias dictadas el 4 de octubre de 2012, por disposición expresa de la hoy derogada Ley de Armas de Puerto Rico,[24] la cual excluye del privilegio de libertad bajo palabra a toda persona que usara un arma de fuego en la comisión de un delito grave o su tentativa. Empero, puntualizó que la Ley de Armas de 2020, establece en su Artículo 7.25 que podrá ser considerado para libertad bajo palabra por la JLBP al cumplir el setenta y cinco (75) por ciento del término de reclusión impuesto.[25] Expresó, además, que este beneficio era retroactivo y, por tanto, incluía a todas las personas convictas bajo la anterior Ley Núm. 404 del 2000. Añadió que el expediente de la hoja de liquidación de sentencias realizada por el DCR no demostraba una liquidación de sentencia, en cuanto a la violación de los Artículos de la Ley de Armas en el que se atemperara al setenta y cinco (75) por ciento el mínimo si se establecía el máximo de reclusión de la pena impuesta.

Dado a lo anterior, la JLBP resolvió que el recurrente debía ser referido por el DCR a la JLBP una vez estuviese cumplido el setenta y cinco (75) por ciento de la sentencia por violación al Artículo 5.04 de la Ley de Armas de Puerto Rico,[26] de acuerdo la Ley de Armas de 2020,[27] y la Ley Núm. 85.[28]

---

[23] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 3, págs. 195-198.
[24] Ley Núm. 404, *supra*, 25 LPRA sec. 455 nota *et seq.* (Derogada).
[25] Ley Núm. 168, *supra*, 25 LPRA sec. 467l.
[26] Ley Núm. 404, *supra*, 25 LPRA sec. 458c. (Derogado).
[27] Ley Núm. 168, *supra*, 25 LPRA sec. 467l.
[28] Ley Núm. 168-2022, *supra*.

En desacuerdo, el 31 de octubre de 2025, el recurrente interpuso una solicitud de reconsideración,[29] la cual no consta del expediente administrativo que haya sido acogida por la JLBP.

Conviene mencionar que se desprende de los autos ante nuestra consideración que el 28 de octubre de 2025, la JLBP expidió una *Citación para vista,*[30] la cual se encuentra programada para el 26 de enero de 2026 a las 8:30 am, para considerar la libertad bajo palabra.

Inconforme, el 10 de diciembre de 2025, el recurrente suscribió un recurso de revisión en el cual esgrimió la comisión de los siguientes tres (3) errores:

> Primer error: Erró la Junta de Libertad Bajo Palabra al realizar una evaluación mecánica, pro-forma, violentando así los preceptos básicos contenidos en la Sección 19 del [Á]rtículo V de la Constitución del Estado Libre Asociado de Puerto Rico, dirigidos a la rehabilitación del confinado y, a su vez, contenidos en la propia misión y propósito de ser del Organismo, y en la génesis para la creación de la Ley Núm. 118 de 22 de julio de 1974 ("Ley 118") que se creó la Junta. Por tanto, el criterio utilizado para negar el privilegio de libertad bajo palabra es uno arbitrario, que est[á] en contravención con el espíritu y objetivo de la ley que autoriza el manual donde est[á] contenido.
>
> Segundo error: Erró la Junta de Libertad Bajo Palabra (J.L.B.P., en adelante) al negar la libertad bajo palabra alegando esta vez como único criterio para sostener su determinación el incumplimiento del 75% de la sentencia, ignorando el término de sentencia cumplido por el recurrente en prisión y de los múltiples errores en la Hoja de Liquidación de Sentencia los cuales fueron subsanados en parte a petición del mismo recurrente.
>
> Tercer error: Erró la Junta de Libertad Bajo Palabra al obviar su propia evaluación y análisis fundamentada en m[ú]ltiples criterios, los cuales después de haber sido solicitados por ellos en vista anteriores y subsanados por el recurrente, deciden denegar al recurrente en el presente el privilegio por un criterio nunca antes mencionado, lo cual por los fundamentos aquí expuestos resulta inválido, lo cual refleja sin lugar a dudas que es un mecanismo estereotipado abusando de su discreción. (Resoluciones), Exhibits 5, 6, 7 y 8.

Mediante *Resolución,* emitida el 19 de diciembre de 2025, concedimos a la Junta de Libertad Bajo Palabra hasta el 29 de diciembre de 2025, para presentar copia certificada del Expediente

---

[29] SUMAC TA, a la Entrada Núm. 3, Anejo I parte 3, págs. 186-193.
[30] *Íd.,* pág. 199.

Administrativo Número 147585. Además, concedimos a la JLBP, por conducto de la Oficina del Procurador General, hasta el 15 de enero de 2026, para exponer su posición en cuanto al recurso.

En cumplimiento con lo ordenado, el 29 de diciembre de 2025, compareció la JLBP por conducto de la Oficina del Procurador General para presentar copia certificada del expediente administrativo. Por otro lado, el 21 de enero de 2026, compareció la JLBP, por conducto de la Oficina del Procurador General mediante *Escrito en cumplimiento de resolución y solicitud de desestimación.* Aduce que el recurso debe ser desestimado tras razonar que el mismo es académico. Fundamentó lo anterior en que se encuentra señalada una vista para el 26 de enero de 2026. Adelantamos que declaramos la solicitud de desestimación *No Ha Lugar*.

Ahora bien, con el beneficio de la comparecencia de ambas partes procederemos a exponer el derecho aplicable.

II

### A. La Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[31] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[32] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[33] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[34] Esta doctrina

---

[31] *Asoc. Condómines v. Meadow Dev.*, 190DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[32] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[33] *Asoc. Condómines v. Meadows Dev.,* supra, a la pág. 847.
[34] *Empresas Ferrer v. ARPe,* 172 DPR 254, 264 (2007).

dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[35]

A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[36] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[37]

Es norma sabida que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[38] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[39] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[40] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[41] En cuanto a la evidencia sustancial, se

---

[35] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018).
[36] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias. V. Caribe Specailty et al. II,* 179 DPR 923, 940 (2010); *Mun. de San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[37] *Asoc. Vec. Altamesa Este v. Mun. de San Juan,* 140 DPR 24, 34 (1996).
[38] *Rolón Martínez v. Supte. Policía,* supra, a la pág. 35.
[39] *Íd.*
[40] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[41] *Otero v. Toyota*, 163 DPR 716, 727 (2005).

ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[42] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[43] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[44] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[45]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[46] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[47] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[48] En cambio, las conclusiones de derecho son revisables

---

[42] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota,* supra, a la pág. 728.

[43] *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR,* 144 DPR 425, 437 (1997).

[44] *Hilton v. Junta de Salario Mínimo,* 74 DPR 670, 687 (1953).

[45] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme,* 3ra ed., Colombia, Ed. Forum, 2013.

[46] *OEG v. Martínez Giraud,* 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE,* 188 DPR 252, 277 (2013); *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

[47] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).

[48] *Otero v. Toyota,* supra, a la pág. 728.

en todos sus aspectos.[49] Lo anterior fue reiterado por nuestro Tribunal Supremo cuando expresó que "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos."[50]

Establecido lo anterior, es de ver que los foros apelativos deberán intervenir con las decisiones de las agencias administrativas cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, o (iv) la actuación administrativa lesiona derechos constitucionales fundamentales.[51] Entiéndase que, aunque los tribunales están llamados a conceder cierta deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[52]

### B. La Ley de Armas

La Ley de Armas de Puerto Rico de 2020 (Ley de Armas de 2020) fue creada con el propósito de: (i) atemperarse a la realidad actual, buscando un balance entre el derecho constitucional de una persona a poseer y portar armas y el derecho del estado a regularlo; (ii) reducir los costos asociados a poseer y portar un arma; (iii) establecer una amnistía para el recogido de armas ilegales; (iv) añadir delitos adicionales por el uso indebido de armas de fuego, y (v) derogar la Ley Núm. 404-2000, según enmendada, conocida

---

[49] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[50] *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56, 215 DPR ___ (2025).
[51] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe*, supra, a la pág. 264.
[52] *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024).

como Ley de Armas de Puerto Rico.[53] La Ley Núm. 404-2000 era una legislación fundamentada en la "doctrina del privilegio", por lo que era una ley restrictiva que se enfocaba en regular la tenencia y uso de armas de fuego.[54] En mérito de ello, la Ley de Armas de 2020 tiene como fin ser consistente con la Segunda Enmienda de la Constitución de Estados Unidos, con las decisiones del Tribunal Supremo Federal, y dejar claro que, en Puerto Rico, el portar y poseer armas de fuego es un derecho fundamental e individual, al igual que en la nación norteamericana.[55]

Como corolario de lo anterior, y lo pertinente al presente caso, es de ver que, según la hoy derogada Ley de Armas de Puerto Rico, aquellas personas que cometieran el delito de portación y uso de armas sin licencia, así como el delito de disparar o apuntar armas no tenía derecho a salir en libertad bajo palabra, y debían cumplir en años naturales la totalidad de la pena impuesta.[56] Ahora bien, al promulgarse la Ley de Armas de 2020, se dispuso que "todas las penas de reclusión que se impongan bajo esta Ley o la Ley 404-2000, según enmendada, podrán ser consideradas para la libertad bajo palabra por la Junta de Libertad bajo Palabra al cumplir el setenta y cinco (75) por ciento del término de reclusión impuesto".[57] De manera que, todas aquellas personas juzgadas bajo la derogada Ley de Armas de Puerto Rico, y que no eran elegibles para el privilegio de libertad bajo palabra, podrían, en adelante, cualificar para el aludido privilegio una vez cumplan el setenta y cinco (75) por de la pena de reclusión impuesta.

---

[53] Propósitos de la Ley Núm. 168, *supra,* 25 LPRA sec. 461 *et seq.*
[54] *Íd.*, Exposición de Motivos.
[55] *Íd.*
[56] Véase, Artículos 5.04 y 515 de la Ley Núm. 404, *supra,* 25 LPRA secs. 458c y 458n.
[57] Artículo 7.25 de Ley Núm. 168, *supra,* 25 LPRA sec. 467l.

### C. La Libertad Bajo Palabra

Mediante el sistema de la libertad bajo palabra, se permite que un persona convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder el aludido privilegio.[58] Particularmente, este beneficio pretende propiciar que las personas confinadas se reintegren a la sociedad en forma positiva, tan pronto estén capacitados, sin tener que estar encarcelados por todo el término de la sentencia impuesta.[59] Ahora bien, la libertad bajo palabra es un privilegio, no un derecho, el cual se otorga en el mejor interés de la sociedad y cuando las circunstancias establezcan que propiciará la rehabilitación del confinado.[60] El referido privilegio es regulado primordialmente por la Ley y el Reglamento de la Junta de Libertad Bajo Palabra.[61]

Cabe resaltar que, el 11 de octubre de 2022, se promulgó la Ley Núm. 85-2022 a los fines de: (i) enmendar el Artículo 308 del Código Penal de Puerto Rico, para establecer los términos para cualificar para la consideración de la Junta de Libertad Bajo Palabra; (ii) enmendar el Artículo 3 de la Ley de la Junta de Libertad Bajo Palabra, para atemperar su contenido con las disposiciones de este estatuto y lo dispuesto en Ley de Armas de 2020; (iii) disponer sobre la retroactividad de la aplicación de esta Ley, y (iv) para otros fines relacionados.[62] A su vez, el referido estatuto tiene el objetivo de "establecer una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos

---

[58] *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987).
[59] *Íd.*
[60] *Rivera Beltrán v. J.L.B.P.,* 169 DPR 903, 905 (2007); *Lebrón Pérez v. Alcaide, Cárcel de Distrito,* 91 DPR 567, 573 (1964).
[61] Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de Julio de 1974, 4 LPRA sec. 1501, *et seq*; Reglamento de la Junta de Libertad bajo Palabra, Reglamento Núm. 9603 del 25 de septiembre de 2024.
[62] Propósitos de la Ley Núm. 85-2022, *supra.*

de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable".[63]

Particularmente, se enmendó el Artículo 3 (a) (6) para disponer que "en aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos".[64]  En el caso de que más de uno de los delitos conlleve la misma pena, se cualificará para la libertad bajo palabra con meramente cumplir el término de una de ellas.[65] Es importante destacar que la antes señalada enmienda es de aplicabilidad aun si la Ley por la cual se resulta convicto es una Ley Penal Especial.[66] Asimismo, se especifica en la Sección 4 de la Ley Núm. 85 que "[l]as disposiciones de esta Ley prevalecerán sobre cualquier otra disposición de ley que no estuviere en armonía con lo aquí establecido".[67] Por otro lado, es menester destacar que "[e]sta Ley aplicará de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada".[68]

III

En el presente caso, el recurrente nos invita a concluir mediante sus tres (3) señalamientos de error, que la JLBP incidió al denegarle el privilegio de libertad bajo palabra. Según expusimos en nuestra exposición doctrinal previa, uno de los principales fines de la revisión judicial es delimitar la discreción de los organismos

---

[63] Exposición de motivos de la Ley Núm. 85-2022, *supra.*
[64] Ley Núm. 118, *supra*, 4 LPRA sec. 1503.
[65] *Íd.*
[66] *Íd.*
[67] Ley Núm. 85-2022, *supra.*
[68] *Íd.*, Sección 3.

administrativos para asegurar que ejerzan sus funciones de forma razonable.[69] En consecuencia, entre los aspectos que le corresponde examinar a esta Curia es si la agencia concedió un remedio apropiado.[70] Así, pues, se nos permite intervenir cuando la actuación de la agencia resulte arbitraria, irrazonable o ilegal.[71] Tras revisar detenidamente los autos ante nuestra consideración, entendemos que el proceder de JLBP fue razonable, pese a que colegimos que la agencia aplicó erróneamente el derecho al presente caso. En mérito de lo anterior, concluimos que, en este caso, no amerita que intervengamos con la *Resolución* recurrida. Nos explicamos.

Según adelantamos, la controversia de marras inició cuando la JLBP recibió un informe del DCR el cual indicaba que el aquí recurrente era elegible para el privilegio de libertad bajo palabra, luego de la aplicación de la Ley Núm. 85.[72] Tras un historial administrativo extenso, en el cual la JLBP tuvo a su consideración la elegibilidad del recurrente para el señalado privilegio, se emitió la *Resolución* objeto de revisión. En esta, la JLBP resolvió que la hoja de liquidación de sentencias emitida por el DCR no demostraba una liquidación de sentencia, en cuanto a la violación de los Artículos de la Ley de Armas en el que se atemperara al setenta y cinco (75) por ciento el mínimo si se establecía el máximo de reclusión de la pena impuesta, lo cual era necesario para que este fuera elegible para libertad bajo palabra. Así, pues, ordenó a que este fuera referido por el DCR una vez el recurrente cumpliera con lo anterior.

Inconforme, y luego del expediente remitido por la JLBP, no se desprende que se hubiese atendido una oportuna solicitud de reconsideración presentada por el recurrente, entonces acudió ante

---

[69] *Empresas Ferrer v. A.R.Pe.*, supra, a la pág. 264.
[70] *Batista, Nobbe v. Jta. Directores*, supra, a la pág. 217.
[71] *The Sembler Co. v. Mun. de Carolina,* supra, a la pág. 822 (2012).
[72] Ley Núm. 85-2022, *supra.*

esta Curia. En su recurso, manifiesta que la JLBP incidió al no considerar en su totalidad todas las disposiciones de la Ley Núm. 85.[73] En esto, le asiste razón.

La JLBP fue acertada en su análisis en cuanto a la evolución del privilegio de libertad bajo palabra al amparo de la Ley de Armas. Según reseñamos previamente, mediante la hoy derogada Ley de Armas de Puerto Rico, quien cometiera los delitos de portación y uso de armas sin licencia, así como el delito de disparar o apuntar armas no tenía derecho a salir en libertad bajo palabra, y debía cumplir en años naturales la totalidad de la pena impuesta.[74] Sin embargo, al aprobarse la Ley de Armas de 2020, todas las penas de reclusión que se impongan bajo este estatuto, pueden ser consideradas para la libertad bajo palabra al cumplir el setenta y cinco (75) por ciento del término de reclusión impuesto.[75] Esta disposición se aplicó de manera retroactiva a aquellos que habían sido juzgados bajo la Ley de Armas anterior, como es el caso del recurrente.[76]

Ahora bien, la JLBP, tal cual planteó el recurrente, ignoró las disposiciones de la Ley Núm. 85, la cual, según adelantamos, se aprobó con el fin principal de permitirle a personas convictas por varios delitos, como al aquí recurrente, poder ser consideradas para la libertad bajo palabra.[77] A esos fines el referido estatuto enmendó el Artículo 3 de Ley de la Junta de Libertad Bajo Palabra y lo dispuesto por la Ley de Armas de 2020, para disponer que "en aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el

---

[73] Ley Núm. 85-2022, *supra.*
[74] Véase, Artículos 5.04 y 515 de la Ley Núm. 404, *supra.*
[75] Artículo 7.25 de Ley Núm. 168, *supra.*
[76] *Íd.*
[77] Exposición de motivos de la Ley Núm. 85-2022, *supra.*

término concerniente a la ***pena mayor recibida*** por alguno de los delitos cometidos".[78] Lo anterior, sin importar que alguna de las leyes por la cuales resulta convicto sea una ley especial.

Según vimos, el aquí recurrente se encuentra recluido por infracciones al: (i)Artículo 106 del Código Penal del 2004;[79] (ii) Artículo 5.04 de la Ley de Armas de Puerto Rico;[80] (iii) Artículo 5.15 de la Ley de Armas de Puerto Rico,[81] y (iv) Artículo 2 de la Ley Núm. 15.[82] Todas las señaladas infracciones, con penas a cumplirse de manera consecutiva. Siendo así, al recurrente le era de aplicación el Artículo 3 (a) (6) de la Ley de la Junta de Libertad Bajo Palabra, haciéndolo elegible para el privilegio una vez cumpla la ***pena mayor recibida*** por alguno de los delitos cometidos.

No obstante, lo anterior, del expediente administrativo, el cual incluye las Hojas de Liquidación de Sentencia preparadas por el DCR no se evidencia que este al momento haya cumplido con la pena mayor recibida, entiéndase, la de veinte (20) años, por haber infringido el Artículo 5.04 de la Ley de Armas de Puerto Rico,[83] y al haberse duplicado la pena de acuerdo con Artículo 7.03 de la misma ley.[84] Mucho menos, se evidencia que el recurrente haya cumplido con el setenta y cinco (75) por ciento del término de reclusión impuesto por las infracciones a los Artículos de la Ley de Armas, las cuales suman a una pena consecutiva de treinta (30) años. Siendo así, las cosas, el recurrente de ninguna manera es elegible, en este momento, para el privilegio de libertad bajo palabra. De modo que, tomando en consideración que, conforme a nuestro marco doctrinal, la parte que interese que se concluya que la determinación de la

---

[78] Artículo 3 (a) (6) de la Ley Núm. 118, *supra.*
[79] Ley Núm. 149-2004, *supra,* 33 LPRA sec. 4734. (Derogado).
[80] Ley Núm. 404, *supra,* 25 LPRA sec. 458c. (Derogado).
[81] *Íd.,* 25 LPRA sec. 458n. (Derogado).
[82] Según adelantamos no se desprende del expediente administrativo con especificidad sobre cuál Ley Núm. 15 se cometió la infracción.
[83] Ley Núm. 404, *supra,* 25 LPRA sec. 458. (Derogado).
[84] *Íd.,* 25 LPRA sec. 460b. (Derogado).

agencia fue irrazonable, deberá demostrar que existe otra prueba en el expediente que impida concluir que la determinación de la agencia fue la apropiada, [85] cosa que no ocurrió en este caso, estamos impedidos de sustituir el criterio de la agencia por el nuestro.

Por todo lo antes expuesto, concluimos que ninguno de los tres (3) errores esgrimidos por el recurrente fue cometido. En consecuencia, nos es forzoso confirmar el dictamen recurrido, aunque por otros fundamentos.

IV

En mérito de lo antes expuesto, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[85] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.